### ANDRIST *v*. UNION PAC. RY. CO.

*(Circuit Court, D. Colorado. February 24, 1887.)*

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INJURY TO PASSENGER ON TRAIN—STARTING TRAIN WITHOUT NOTICE—MAKING UP TRAIN.

   While the passengers in an emigrant car, which had been side-tracked over night, were outside in the morning, the train suddenly started, without any signal being given. Plaintiff, who was one of the passengers, jumped onto the platform of the car next to his own, and, after waiting a moment, until a brakeman who stood in the passage-way moved to one side, he proceeded to cross to his own car. At that moment the cars separated, having been previously uncoupled in order to divide the train, and plaintiff fell between them, and was run over. The brakeman had remained silent all the time. *Held*, that there was negligence on the part of the company which was the proximate cause of the injury, and that whether plaintiff was guilty of contributory negligence was a question for the jury.

2. SAME—INSTRUCTIONS AS TO CONTRIBUTORY NEGLIGENCE.

   The jury having been instructed that, if the fault of both parties caused the injury, plaintiff could not recover, *held*, that a new trial should not be granted because another part of the charge defined contributory negligence as some fault or act on the part of the person injured that brought about the injury, or because the trial judge failed to say to the jury that, if they should find that but for the negligence of plaintiff the accident would not have happened, they must find for the defendant.

3. NEW TRIAL—ABSENCE OF WITNESS.

   The absence of a witness *held* not ground for granting a new trial, it being considered that the testimony which it was claimed he would give would not affect the question of contributory negligence at all, and would not justify the jury in finding no negligence on the part of the defendant.

Motion for a New Trial.

*Stallcup & Shafroth*, for plaintiff.

*Teller & Orahood*, for defendant.

BREWER, J. This was an action for personal injuries. Plaintiff had a verdict for $3,500, and defendant asks a new trial. The facts are these: Plaintiff, who is a native of Switzerland, came to this country in March, 1884. In May of that year he started to go as passenger on one of the trains of defendant from Kansas City to Ogden. He rode in an emigrant car. He was not familiar with railroad traveling, and could

scarcely speak or understand a word of the English language. The train arrived in Denver about half-past 11 o'clock on the eleventh of May. It remained at Denver all night. For convenience of inspection and washing of cars it was taken up to the yards of defendant, and left there. The plaintiff remained in the car all night. In the morning the employes of the defendant began washing the outside of the car, throwing a stream upon it through the hose. The water spattered through the windows, and, to escape being wet, all the passengers went outside. After a short time, and while the plaintiff was standing about 70 or 80 feet from the car, without any warning or signal, the train commenced moving. As soon as he saw the train moving, plaintiff hurried to get onto the car on which he had been riding. The train was then moving slowly, and in a westerly direction. When he reached the train he was at the east platform of his car. A brakeman was standing on the steps, and not moving. Plaintiff stepped onto the west platform of the next car. He was intending to go from this platform into the car in which he had been riding, but, when he got to the passage-way between the two platforms, the brakeman had passed from the steps to the center of the platform, and just filled the passage-way. Nothing was said by or to the brakeman. After a few moments, the brakeman stepped one side, and plaintiff started to step from the one platform to the other. At that moment the cars parted, and plaintiff fell between them, and was run over, and injured. At the time of the parting the train was moving with considerable speed. The cause of the parting was this: The train coming from Kansas City was composed of cars, some of which were going from Denver in one direction, and some in another; and, as was the custom, the employes were simply then making up the two trains. The entire train was backed with some force and speed towards the depot, and, when sufficient speed had been attained, the engine was reversed, and, the cars having been uncoupled at the proper place, the cars in advance moved on to the depot, while the remainder were switched onto another track. The speed which this train had attained at the time of the parting was about 12 miles an hour.

Now, it is claimed by the defendant—*First*, that the company was guilty of no negligence causing the injury; *second*, that the plaintiff was guilty of contributory negligence; *third*, that the court erred in the instructions; and, *fourth*, that, in the exercise of its discretion, the court should grant a new trial by reason of the absence of an important witness.

I think it may be taken beyond doubt that when a train stops, as this did, over night, a passenger has a right to get out from the car, and take the fresh air, providing he keeps within a reasonable distance of the train, and that it is negligence to start the train, under these circumstances, without giving some reasonable notice or warning to enable the passengers to take their places in the car before it starts. Indeed, I understand counsel for the company to concede this. But the contention is that this negligence was not the cause, but simply the occasion, of the injury; the cause being the parting of the train, and that such parting of the train, being the ordinary and usual way of making up trains, was not negli-

gence. They have made quite an elaborate and ingenious argument, distinguishing between that which is but the occasion and that which is the cause of the injury, and have cited many authorities in which that matter has been fully discussed. Their reasoning is not at all satisfactory to me. It compels in the case at bar a refinement and analysis of the relation of causes to effect which seems to me illy in accord with practical affairs and the limits of just responsibility. Where two or three acts work together to a single result, it will not generally do to take the last act in the succession of time, or in proximity to the result, and say that this is alone the cause, and the others simply the occasion.

Now, that there are times in which a railroad company may break up even a passenger train in the way that this was done, I do not doubt. But to take a passenger train whose passengers it has fair reason to believe are not all in their seats in the cars, and who it may fairly expect are moving from car to car in search of their places, and to tear it asunder in the way that this was done, cannot, I think, be excused. To take a freight train, whose contents have no self-motion, and break it up in this way, may be proper. To take a passenger train which has just come into the depot, and break it up in like manner, may not be subject to question; for it must be expected that if passengers take advantage of a mere temporary stop to step off of the train, that they will look out for themselves in getting back. They are bound to expect an immediate start, either to leave the depot, or to separate the train for adding or leaving cars. But to take a train which has been at a stop for hours, and where the company has every reason to suppose that passengers have taken advantage of the long delay to get the fresh air, and to start such a train without notice or warning, and then break it asunder in the way this was done, seems to me most gross and culpable negligence. It is not the mere fact of breaking up the train, but the breaking it up under the circumstances, which makes the negligence. Indeed, I may say that at the trial I hesitated no little as to whether I should not charge the jury that, as a matter of law, the defendant was guilty of negligence, and that the only question which they had to decide was the contributory negligence of the plaintiff. The more I have reflected on this matter the stronger has become my conviction, and I do not hesitate to affirm that, before a railroad company can be excused from culpable negligence in thus breaking up a passenger train which has been kept for hours at a station, it must have given ample notice, by whistle or ringing of bells, or otherwise, to all passengers of the intention to start, or in some other way seen that they had secured their respective places in the cars.

Passing, now, to the second question, that is really the doubtful question. In respect to that, I charged the jury that it was the duty of the plaintiff to take every precaution that a man of ordinary prudence would take for his personal safety; that the platform was a place of known danger; that passing from platform to platform everybody knew was dangerous, and was not like passing over the floor of a room, or even through the aisle of a car; and that no man could excuse himself upon the ground of ignorance from taking the ordinary precautions, in a place

of known danger, for his personal safety. Now, it appears from the testimony of the plaintiff that he stood for some moments at the passage-way between the two platforms, waiting for a brakeman who obstructed the passage to the other platform to get out of the way, before crossing to it. Nothing was said by that brakeman to warn him of the approaching separation; nothing to stay him from attempting to cross when he was out of the way. It was undoubtedly the duty of the plaintiff, under the circumstances, in attempting to cross from one platform to the other, to look out for himself, and to see that the cars had not parted, and that he had a place to put his foot in stepping; and it is undoubtedly true that, taking separate answers of the plaintiff to questions put upon cross-examination, it would seem that his eyes were upon the brakeman, and not upon the place where he was stepping. But taking the whole testimony that he gave, remembering the illustrations he made upon the trial of his motions, and also taking into account his imperfect knowledge of our language, it seems to me that there was a fair question of fact presented to the jury as to whether he stepped forward without notice or care when he was stepping, or attempted the crossing after noticing the absence of the brakeman, and with a glance at the platform, and a notice of nothing to indicate danger, or an immediate separation of the cars. If I was satisfied that he took no notice of the platform, that he was simply watching to see when the brakeman had removed from the passage-way, and that he stepped forward without noticing where his foot was to land, I should be compelled to say that he was guilty of contributory negligence, and ought not to recover; but I was doubtful at the trial, and I am still uncertain, as to the fair import of his testimony, and as to the real facts. With that doubt resting on my mind, and in face of what seems to me undoubted culpable negligence of the company, I do not feel at liberty to ignore the conclusion of the jury. I indorse fully all that was said by counsel, and all that I have heretofore said in the quotation made by them of the duty of the court to hold every case in hand, and to see to it that no prejudice or bias of the jury distorts the facts, or establishes a conclusion against those facts; but my own mind then and now was and is in so much doubt that I do not feel warranted in saying that the jury erred.

*Thirdly*, counsel criticise my instructions as to contributory negligence, in that I did not say to the jury that if from the evidence they find that, but for the negligence of the plaintiff, the misfortune would not have occurred, they should find for the defendant; and that I did say to them, in defining contributory negligence, that it was some fault or act on the part of the person injured that has brought about the injury. Whatever force there may be to the criticism upon this language of mine, standing by itself, I elsewhere, in specifying the various circumstances under which an accident might happen, stated to them that it might happen because both parties have been careless or negligent; and, if carelessness or negligence or fault of both parties caused the injury, in such case there could be no recovery; and also, after defining the duty of the plaintiff, said to them that, "if he did not take care of

himself as a man of intelligence should have done, you will say he is at fault, and, being at fault, he is not entitled to recover." I can but think that, taking the instructions as a whole, the matter was fairly and fully left to the jury, and that they were not misled as to the true rule of law.

With regard to the last point made by counsel, the absence of important testimony, I appreciate fully the rule that they lay down, that the discretion of the court should be exercised wherever it is apparent that, without fault or misconduct of either party, the full facts have not been presented to the jury; and I have considered with care the testimony which they say could have been presented by this absent witness. I do not think it would have affected in the slightest degree the question of contributory negligence of the plaintiff, which to my mind is the pivotal question; and, while it may throw some doubts upon the question of the negligence of the company, I do not think it such that a jury would certainly or ought to have found the company free from negligence. Under these circumstances, I do not think, although the amount is not such as permits a review by an appellate court, that I would be justified in setting aside the verdict, and submitting the question to a new jury.

The motion for a new trial will be overruled.