MAURICE B. FITZGERALD, RESPONDENT, v. COLORADO LIFE COMPANY, APPELLANT.—116 S. W. (2d) 242.

Kansas City Court of Appeals.   April 4, 1938.

*DuBois, Miller & Beavers* and *F. P. Stapleton* for respondent.

*Ryland, Stinson, Mag & Thomson* and *Robert E. Rosenwald* for appellant.

*R. H. Walker* of Counsel.

SHAIN, P. J.—This is an action to recover on an insurance policy alleged to have been issued to J. L. Enyart by the defendant, and wherein the wife, Ritchie Lee Enyart, is alleged as beneficiary.

The plaintiff herein is a citizen of the State of Colorado, brother of Ritchie Lee Enyart, and the assignee of the right, title and interest of Ritchie Lee Enyart, as beneficiary in the alleged contract of insurance.

The defendant is an insurance company chartered under the laws of the State of Colorado and licensed to do a life insurance business in the State of Missouri.

The pleadings are of such relation to questions presented for review that, with omission of caption, we include same herein.

The plaintiff's petition is as follows:

"That on March 28, 1934, J. L. Enyart, of Gentry County, Missouri, made and entered into a contract of insurance upon the life of the said J. L. Enyart with this defendant company; that at said time, said J. L. Enyart made application in writing to said defendant com-

pany for said insurance, and it was at the time agreed between said J. L. Enyart and this defendant company that said contract of insurance would be evidenced by a policy of insurance to be issued by defendant and delivered to said J. L. Enyart; that by said contract of insurance, Ritchie Lee Enyart, wife of said J. L. Enyart, was designated and made beneficiary in and under said contract of insurance and under and in said policy of insurance to be issued by said defendant company; that under said contract of insurance and the written application of said J. L. Enyart to defendant therefor, it was stated and agreed that if said application for insurance was accepted and approved by defendant that said insurance would become and be effective and binding on defendant from the date of said application, to-wit, from noon, twelve o'clock, March 28, 1934; that at the time of and in making said contract of insurance and written application therefor to defendant, said J. L. Enyart paid to defendant, and defendant received and accepted and still retains the agreed premium and consideration for same in the sum of $191.45, paying for said insurance for the terms of one year from said March 28, 1934; that under and by the terms of said insurance contract and the application of said J. L. Enyart therefor, in case of the death of the said J. L. Enyart, while said contract was in force and effect, defendant company agreed to pay to said Ritchie Lee Enyart, the beneficiary therein, the sum of $5000 on due notice and proof of such death.

"That prior to the making of said insurance contract on March 28, 1934, on divers occasions, the definite dates to said Ritchie Lee Enyart and to this plaintiff being unknown, defendant through its agents and servants duly authorized by defendant, solicited and induced said J. L. Enyart to permit and allow to lapse other life insurance carried by the said J. L. Enyart, payable to said Ritchie Lee Enyart in case of his death; that following the making of said insurance contract and said application therefor, on March 28, 1934, defendant stated and represented to said J. L. Enyart that his said contract of insurance and application therefor had been approved and accepted by the defendant company, that its policy of insurance had been issued and would be delivered to said J. L. Enyart; that during said time, J. L. Enyart was able to and would have procured insurance on his life in other companies and was able to and would have had other insurance on his life, payable to his wife, said Ritchie Lee Enyart, in case of his death, and would so have done, but for the said representations and statements of defendant; that his said contract of insurance and application therefor to defendant had been accepted and approved by defendant; that his said insurance with defendant was then in full force and effect, and that defendant's policy would be duly delivered to him; that believing said statement and representations of defendant, and relying thereon that his said contract of insurance

and application therefor had been accepted and approved by defendant, that his said insurance was in full force and effect, and that the defendant's said policy of insurance would be delivered to him, the said J. L. Enyart did not obtain and procure on his life other insurance.

"That thereafter, and on September 10, 1934, and while said contract of insurance was in full force and effect, said J. L. Enyart died in Gentry County, Missouri, and the said Ritchie Lee Enyart, his widow and beneficiary named in said insurance contract, immediately notified the defendant company of the death of the said J. L. Enyart and demanded that it furnish to her proper blanks for making proof of the death of the said J. L. Enyart; that said defendant company duly received the said notice of death of the said J. L. Enyart from Ritchie Lee Enyart, but refused to furnish said Ritchie Lee Enyart with blanks on which to make proof of the death of the said J. L. Enyart, and defendant denied all liability on said contract of insurance and refused to make any payment whatever to the said Ritchie Lee Enyart on said contract of insurance and for the death of said J. L. Enyart.

"That said policy of insurance on the life of the said J. L. Enyart was, in fact, issued by the defendant company, but was never received by the said J. L. Enyart or the said Ritchie Lee Enyart, and that under all the facts herein stated, defendant is estopped from denying the making of said insurance contract, the issuance of said policy of insurance evidencing same and its liability thereon.

"That said Ritchie Lee Enyart, immediately following the death of said J. L. Enyart on September 10, 1934, and at divers times since September 10, 1934, demanded the payment to her by defendant of the amount due under said insurance contract, but defendant has failed and refused to pay same and every part thereof.

"That the said Ritchie Lee Enyart and this plaintiff have fully complied with and performed all the terms and conditions of said contract of insurance required by them to be performed.

"That by reason of all the facts herein stated, there became and was due said Ritchie Lee Enyart under said contract of insurance the sum of $5000, with six per cent interest thereon from the time same became due.

"That defendant has failed and refused to pay the amount due under said contract of insurance, and defendant's failure and refusal to pay same was and is without just cause or excuse, and was and is vexatious.

"Plaintiff states that he is now the holder and owner of said claim and demand against defendant arising out of said contract of insurance by virtue of the said death of J. L. Enyart, and that the said Ritchie Lee Enyart has assigned all of her right, title and in-

terest in and to all claims or damages under said contract of insurance and damages thereunder to this plaintiff.

"Plaintiff states that by reason of the defendant's vexatious refusal to pay said demand and damage, he has been compelled to and has employed attorneys to institute and prosecute this action, and there is due plaintiff in addition to the amounts hereinbefore stated damages in the sum of ten per cent of the amount due and a reasonable attorney's fee for the institution and prosecution of this action in the sum of $1000.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $5000, with interest thereon at the rate of six per cent from the date payment was due under said contract of insurance, for the further sum of $5000 as and for a penalty for the vexatious refusal of defendant to pay said claim and for the sum of $1000 as and for a reasonable attorney's fee and for costs of suit."

The defendant's answer is as follows:

"1. Comes now defendant, and for answer to plaintiff's petition, denies each and every allegation in plaintiff's petition contained.

"2. Further answering, defendant denies that on March 28, 1934, or at any other time, it made and entered into an insurance contract, either written or oral, with J. L. Enyart, of Gentry County, Missouri, upon the life of said J. L. Enyart, and denies that Ritchie Lee Enyart was ever designated and made beneficiary under any policy of insurance of this defendant.

"3. Further answering, this defendant denies that J. L. Enyart made written application to it for a policy of insurance and denies that any application for such policy was ever received by this defendant.

"4. Further answering, defendant denies that it had any agreement or understanding with J. L. Enyart with respect to any application for insurance or the acceptance thereof.

"5. Further answering, defendant denies that it ever received, accepted or retained any insurance premium from the said J. L. Enyart.

"6. Further answering, defendant denies that it ever agreed to pay to Ritchie Lee Enyart any sum of money whatsoever, on due proof of death of said J. L. Enyart.

"7. Further answering, defendant denies that any of its agents or servants solicited or induced said J. L. Enyart to permit and allow any life insurance carried by said J. L. Enyart to lapse, and denies the authority of any of its agents or servants to make such agreement for and in its behalf.

"8. Further answering, defendant denies that it represented to J. L. Enyart that any contract of insurance or application therefor had been approved and accepted by defendant, or that it had issued

any policy of insurance on the life of said J. L. Enyart, or that any policy of insurance upon the life of said J. L. Enyart was in full force and effect.

"9. Further answering, defendant denies that it is estopped to set up any defense to plaintiff's purported cause of action.

"10. Further answering, defendant denies that plaintiff has the legal capacity to maintain this action, and denies that plaintiff is a proper party plaintiff herein.

"11. Further answering, defendant states that plaintiff's petition filed herein fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant.

"Wherefore, having fully answered, defendant prays judgment.

"Thereafter and by leave of court, at the March, 1937, Term on the 30th day of March, 1937, the same being the tenth day of said term, the appellant, as defendant, filed verification of its answer, in words and figures, as follows, to-wit: (omitting caption and signature).

"State of Missouri, County of Gentry, ss.

"Charles Mehlman, of lawful age, being duly sworn, upon his oath states that he is Vice-President of the Colorado Life Company and as such is authorized to make this verification. Affiant states that he has read and is familiar with the answer of the defendant filed herein and that the facts therein stated are true as he verily believes."

The trial was before a jury. The jury verdict is shown as follows:

"We, the jury, find for the plaintiff and assess his damages for the death of James L. Enyart at $5000 his damages for interest at $766 his damages for vexatious delay at $250 and $750 as and for attorney fee.",

Judgment was had and entered in accordance with the verdict, and from the judgment, defendant has appealed.

In our opinion, we will continue to conform to position in the trial court and refer to respondent as plaintiff and to appellant as defendant.

OPINION.

The defendant at the close of all the evidence offered an instruction in the nature of a demurrer to plaintiff's evidence which was refused by the court. Defendant's first assignment of error is as to court's refusal to give said instruction. The aforesaid assignment calls for a review of all the evidence, and in said review it becomes our duty to consider same in its most favorable light to plaintiff.

The evidence on the part of plaintiff is clearly to the effect that in response to an inquiry from James L. Enyart of McFall, Missouri, L. E. Shelton, a local agent of defendant, who resided in Liberty, Missouri, came to Enyart's place of business in McFall and solicited Mr. Enyart to take out a policy of insurance with the defendant

company. The evidence further discloses that the said James L. Enyart made application for a life policy in the sum of $5000. It is disclosed that an application was drawn up in due form on the blanks of defendant company and duly signed by said Enyart. It is further disclosed that James L. Enyart made payment to agent L. E. Shelton, on the day the application was signed, of one full year's premium, and Shelton gave to him a receipt as follows:

"No........... McFall, Mo. 3-28-1934 19....

"Received of J. L. Enyart 19.14 cash and note for 172.31 as payment in

full on 5000 on his life ...........;..................dollars

in the Colo Life ......................................

$ ........Plff's Ex 3

" E C.

"L. E. Shelton, agent."

It is shown that James L. Enyart, under the instruction of defendant, went to Dr. Frank Hodges, the designated medical examiner of defendant company, and that said doctor made examination and filled out medical examiner's report on the regular blanks of the company.

Neither the application signed by Enyart, nor the medical blanks filled out by the doctor, appear in the evidence. The defendant furnished several forms of application blanks used by defendant and the same appear as exhibits. The defendant also furnished a regular medical examiner's report blank, and same appears as an exhibit.

In all of the application blanks, marked as exhibits, there is contained language to the effect that if the policy is not received in due course the applicant agrees to notify the home office by registered mail. There is shown in the application blanks in evidence what is purported to be a binding receipt that is directed to be detached and given to applicant if settlement is made in full, but if not in full it is not to be detached.

In the medical examiner's report blank in evidence there is included a confidential report that is directed to be sent to the home office. Concerning the medical examination, there is some confusion as to when made, that varies from April to June. The examining doctor was called as a witness by plaintiff and testified that the confidential report was only filled out on occasions where there arose some suspicion, and that said blank was not filled out in his report as to Mr. Enyart. The doctor further testified that in his examination of Mr. Enyart he found him to be an insurable risk.

It is disclosed that no written policy of insurance of defendant was ever delivered to James L. Enyart in his lifetime. It is shown that Mr. Enyart never took up the matter of delay in delivery of policy with the home office. It appears that the matter of nondelivery of policy prior to death was taken up only with agent Shelton.

The evidence is to the effect that after the death of Mr. Enyart the defendant was duly notified and blank proof of loss demanded, but was refused by defendant, and defendant denied all liability and refused to pay.

Not as necessarily applying to the issue before us, but in fairness to defendant we state that the defendant placed upon the stand its office manager and vice-president, an actuary from the home office, and that these witnesses, having present the records from the home office, testified clearly and positively to the effect that no application blanks, no medical report, and no premium money had ever reached the home office, and that there were no records in the home office of any transaction concerning negotiations with James L. Enyart at the time of his death, and that no actual knowledge that any such negotiations ever had been had, or claimed to be had, had ever reached the home office until after the death of said James L. Enyart.

It can reasonably be inferred from credible testimony that agent Sheldon had had in his possession the application signed by Mr. Enyart and the medical examiner's report, shortly after said report was made. We conclude that every fact disclosed by plaintiff's evidence, as detailed aforesaid, was all known to defendant's agent, L. E. Shelton. The question arises as to just how much of the knowledge of said agent can be imputed as the knowledge of defendant. This question must be answered in due consideration of said agent's authority. Fortunately the contract between defendant and its agent Shelton is in writing, and a copy of same is in evidence.

The second, third, fourth, fifth and sixth clauses of the contract appear to embrace the express authority given to the agent Shelton, and are as follows:

"(2)  Authority:  The second party is hereby authorized to solicit for the Company, Applications (in writing upon printed forms furnished by the Company, and not otherwise) for Life, Health and Accident Insurance and Annuities. The Second Party is not required to devote his entire business time to the Company.

"(3)  Agents' Contracts:  Contracts with said agents are to be in writing upon forms furnished by the Company, and are not to take effect, or to be binding unless and until approved in writing by an Executive Officer of the Company.

"(4)  Applications:  Every application taken by the Second Party shall be immediately forwarded to the Home Office of the Company.

"(5)  Delivery:  No policy of insurance shall be delivered by the Second Party, or under his authorization, unless settlement for the full 'First Payment' required shall have been taken without rebate, deduction or discount to the insured or owner.

"(6).  Settlements:  Every settlement (whether cash or time) taken on account of any application to, or policy issued by or to be

issued by, the Company shall be taken by the Second Party as a fiduciary trust for the Company. The Second Party hereby guarantees the due payment of each and every 'time settlement' and any and all extensions and/or renewals thereof.''

We conclude that the express authority, above shown, is greater authority than that of a mere soliciting agent who takes applications, delivers the policy, and collects for premiums when the policy is delivered.

We base our conclusions upon the fact that agent Shelton is authorized to take applications and collect the premiums for, and on behalf of, the company prior to acceptance or rejection, and prior to the issuance of the policy, and to hold the premiums so collected under direct authority from defendant, and to hold said premiums for the defendant as a fiduciary trustee for defendant.

It was early declared by the Supreme Court of Missouri, King v. Pearce, 40 Mo. 222, that the acts of an agent within the scope of his authority bind the principal, and a third party dealing with him in good faith on the strength of his agency cannot be prejudiced thereby. This principle appears never to have been departed from by the courts of this State. [Greer v. Layfayette County Bank, 128 Mo. 559, 30 S. W. 319; Universal Paper Products Co. v. R. E. Funston Co., 285 S. W. 516.]

We conclude that the evidence in the case at bar is conclusive to the effect that defendant's acts, in taking James L. Enyart's application and the collecting for one full year's premium in advance, were within the express authority given him by defendant, and that, therefore, at the time said agent took the application and collected the premium, his knowledge of the fact was the knowledge of the master. In other words, his knowledge of the acts done under express authority are under the law imputed to his master, the defendant herein, if and when done.

With the above conclusion in mind, we must consider this cause in our review thereof from the standpoint in law that the defendant had as full notice of the application and the payment of the first year's premium as it would have had had the applicant come to the home office and made the application and paid the premiums there.

We are not holding that the fact of defendant's imputed knowledge of the authorized acts of its agent, aforesaid, created a contract of insurance, or that the defendant is estopped thereby to interpose any legal defense it has to plaintiff's allegations set forth in his petition. We find nothing in agent Shelton's contract of employment from which it can be concluded that Shelton had authority to make a contract of insurance. We are holding, however, that the notice of the acts done by him under express authority from defendant is imputed to defendant, when said acts have been duly performed. It is fundamental that the fact of approval or acceptance of the application is necessary

to a complete contract of insurance. However, if there be such facts shown in evidence that, if found to be true by the jury, would justify the jury to find that the same estopped the defendant from saying that it did not accept or approve the application, then a contract of insurance is concluded to have been made regardless of whether or not a duly prepared and executed written contract has existence.

At the June term, 1934, of this court, we had before us a case wherein the issues are very similar to the issues presented in the case at bar. We refer to Reed v. Prudential Life Ins. Co., 73 S. W. (2d) 1027.

There is a distinction, however, between the Reed case and the case at bar, in that in the Reed case the insured and the beneficiary had their dealings direct with the superintendent of the branch office of the defendant located in Kansas City, Missouri. The conclusions, as to notice that the company had, were based upon defendant's testimony as to authorized authority of the superintendent of the branch office. In the case at bar the defendant also had a branch office in Kansas City, Missouri. However, prior to the death of Mr. Enyart neither he or his wife had any dealings or negotiations whatever with the branch office of defendant in Kansas City, Missouri. It follows that our conclusions as to notice to defendant in the case at bar are based upon our construction of the authority of the agent as set forth in the written contract between the defendant and its agent.

In the Reed v. Prudential Ins. Co., *supra,* case the same question, as to estoppel to deny approval and acceptance of the application, was involved in that case as is involved in the case at bar.

We quote from Reed v. Prudential Ins. Co., l. c. 1031, as follows:

"The question to be decided is whether there are sufficient facts disclosed in the record, which, if found by the jury, would give rise to estoppel on the part of defendant to say that it did not approve or accept the application. Of course, where the contract provides that the insurance shall be in force upon the approval of the application, there is a completed contract upon such approval without the issuance of a policy. [1 Cooley's Briefs on Ins. (2 Ed.), p. 601; Picket v. Equitable Life Assur. Soc. (Mo. App.), 27 S. W. (2d) 452.] It is true, as claimed by defendant, that the general rule is that mere delay in passing upon an application for insurance is not sufficient, within itself, upon which to base estoppel, even though the premium is retained. [32 C. J., p. 1106; Misselhorn v. Mut. Res. Fund Life Ass'n (C. C.), 30 F. 345; New York Union Mut. Ins. Co. v. Johnson, 23 Pa. 72; Indiana Nat. Life Ins. Co. v. Maines, 191 Ky. 309, 230 S. W. 54.]

" 'Silence operates as an assent, and creates an estoppel, only when it has the effect to mislead. There must be such conduct on the part of the insurer as would, if it were not estopped, operate as a fraud

on the party who has taken, or neglected to take, some action to his own prejudice in reliance upon it.' [1 Cooley's Briefs on Ins. (2 Ed.), p. 596.]

" 'There as cases to the effect that delay will hold the company, where the party making the application has been misled into believing that the insurance would be accepted, and, relying thereon, has refrained from obtaining other insurance. Here, it is observed, arises the elements of injury and the consequent estoppel.' [Richmond v. Travelers' Ins. Co., 123 Tenn. 307, 130 S. W. 790, 791, 30 L. R. A. (N. S.) 954, 956.]"

There is some evidence in the case at bar from which it may be inferred James L. Enyart, relying on the insurance applied for, refrained from taking out other insurance and permitted other insurance he had to lapse.

We conclude that a jury in the determination of the question of estoppel, as above referred to, is entitled to take into consideration that defendant is charged with knowledge of the authorized acts of its agents from time said acts are performed, and is entitled to consider lapse of time and the fact that Mr. Enyart had duly made application and paid premiums in advance. Further, we conclude that the jury is entitled to take into consideration in this connection the fact that the examining doctor testified that the applicant by his examination was shown to be a standard risk and also such testimony as bears upon the question of refraining from securing other insurance. We conclude that there is substantial evidence of the aforesaid facts to present an issue of fact to the jury on the issue of estoppel of defendant to deny that it did not approve or accept the application as made. So holding, we are bound by the verdict of the jury. However, we conclude that the fact that defendant is estopped from denying the contract, it is not thereby denied for that reason to make such defense as it had to the merits.

We find no error in the act of the trial court in refusing defendant's instruction in the nature of a demurrer offered at the close of the evidence.

The defendant makes claim of error in admitting the wife of James L. Enyart to testify with respect to statements made by agent Shelton as to when insurance would become effective. We will note that attached to the blank application form, filed as an exhibit, there is what is designated as a binding receipt. Such receipt has distinctly to do with the question as to when insurance becomes effective. This blank was furnished by defendant, and regardless of whether or not the agent's word would or would not be binding on defendant, we can see no reversible error in permitting the witness to testify as to what agent said when asked about a matter so embraced in the application.

Defendant makes claim of error in the court's permitting introduction of letters written by Mrs. Enyart on behalf of her husband to the agent Shelton. These letters were letters of inquiry as to why policy had not been received, and answer from Shelton was received. If it be conceded that these letters be inadmissible in evidence for the purpose of proving what was said in the objection, still as refuting defendant's allegations in its answer, to the effect that James L. Enyart never made application with it for insurance, we conclude that the communications objected to are admissible as refuting the general and some special allegations of detail in defendant's answer. Being so admissible, we cannot convict the trial court of error for admission of same. Claim of error is made as to Shelton's letter in reply to the letters above. We give consideration of the correspondence as a whole and conclude that same is admissible in the light of allegation in defendant's answer, as aforesaid.

A letter from agent Shelton to Mrs. Enyart was introduced by plaintiff over objection of defendant. This letter contained a letter from defendant's state manager to Shelton. Shelton's letter to Mrs. Enyart contains the following:

"Dear Madam, I am enclosing a letter from the Colo. Life which is selfexplanatory. All I can say is that I put the applications and medical reports in the mail as soon as I received them from the Doctor.

"Yours truly,
"L. E. SHELTON"

The inclosed letter from the state manager contains the following:
"Dear Sir :—

"A letter received from the Home Office, dated Sept. 24th, 1934, reads as follows:—

"'A very careful search of our records reveals that we have never received an application for insurance from Mr. James L. Enyart.'

"I believe this is the information which you asked me to obtain for you.

"Yours very truly,
"HUGH BRANSON
HB/T                                        "State Manager."

Defendant charges error in admission of above. We conclude that while said communications may not be admissible as establishing matters stated in the objection, still in view of the allegations set forth in defendant's answer, that same has bearing upon refutation of same, and hence no error in admitting in evidence. Error is charged in admission in evidence of wire from state manager to home office, and answer from home office to state manager. We conclude that these communications have bearing upon question of vexatious delay, and, therefore, we cannot declare error in admitting in evidence.

Mrs. Enyart while on the stand was permitted over the objection of defendant to testify that a policy her husband had with the National Life Insurance Company, of Vermont, was permitted to lapse in December, and also to testify that other insurance was not taken. The question of lapsing old, and refraining from obtaining other insurance was an issue in the case, and upon authority of Reed v. Prudential, *supra,* and authorities cited therein, we conclude no error in permitting the testimony.

The defendant cites a long line of authorities under each of its claims of error as to admission of evidence. It would be an endless task for us to take up, discuss, and differentiate as to these many cited cases. The purpose of setting forth the pleadings in our opinion is to the end of avoidance of going into detail as to a great volume of citations.

It will be noted that in defendant's answer there is not made a single admission. It will be further noticed that no pleading in the alternative is to be found in defendant's answer. Defendant, by its answer, rests its whole defense on allegation that no agent of defendant ever took application for insurance or ever collected any premium upon any application, and that no application was ever received, and no premium money was ever received. Insofar as defendant's answer is concerned, there is not an admission that it was licensed to do business in this State, or that it had an agent, general or special, in the State of Missouri.

Denying that any application was taken, defendant in the trial urges failure to comply with written matters therein. Denying that any agent aver collected premium, defendant in the trial, when it is disclosed that its agent did collect the premium, urges that collection was not in the scope of authority so as to bind defendant, or to impart notice to defendant. However, defendant produces a written contract of agency with Mr. Shelton wherein he is in express terms delegated to collect upon applications, and to hold same in trust for defendant.

We would express it thus: Defendant blows cold in pleading, and blows hot in its contentions in the trial.

Our study of the authorities leads us to the conclusions that there are many avenues left open for admission of testimony in the case at bar that were closed under the issues as presented in the cases cited.

Had the defendant made admissions and plead in the alternative as to matters, and had defendant made tender back of premium collected, or deposited same in court, its objections to the evidence would have presented a different view point.

Error is claimed in the giving of plaintiff's instruction No. 1. An examination of the instruction shows that it conforms to the pleadings, and, we conclude, fairly covers the whole case and in the light of the

law as declared in Reed v. Prudential, *supra*, we find no error therein. We note that defendant cites no authority in support of above claim. Complaint is made that error was made in permitting counsel for plaintiff to argue to the jury that defendant had discharged its agent, Shelton.

In the cross-examination of defendant's vice-president, the following questions and answers appear:

"Q. Is Mr. Shelton connected with your company in any way at this time? A. No, he is not.

"Q. When was his contract terminated? A. His contract was terminated January 16th, 1935."

Defendant cites O'Donnell v. McElroy, 157 Mo. App. 547, 138 S. W. 674. In the O'Donnell case the counsel for plaintiff over objection of defendant quoted a statement that had been made by a former counsel for defendant, and thereafter said counsel had abandoned the case and refused to appear further for defendant. This court held same to be reversible error.

We do not consider that the remark made by counsel in this case has analogy to prejudicial matters above set forth. It probably would have been better for the counsel to have used "terminated" rather than "discharged." However, the word "terminated" and the word "discharged" are often used interchangeably.

In passing, Shelton, the agent, was present at the trial. The record shows plaintiff had subpoenaed Shelton. It would appear that his testimony could have clarified as to issues in the case, and it appears strange that neither plaintiff or defendant called him to the stand.

Error is claimed in giving instruction No. 2, which submitted vexatious delay, and also as to admission of evidence as to value of attorney fees.

In the light of the evidence of due notice of death, and refusal of defendant to furnish blanks for proof of loss, and denial of liability before suit was brought, and in view of contents of telegrams from defendant's superintendent in Missouri to the home office and reply thereto that was sent and received before suit was brought, we conclude that defendant's claim of error above is not well taken.

The case at bar presents many close points, and the briefs filed upon behalf of plaintiff and defendant reflect credit upon the counsel on both sides. The failure of defendant's agent to report his acts direct to the company works a hardship on the company. However, the hardship is due to the acts of its own agent. As declared in King v. Pearce, *supra*, the third person dealing with defendant's agent in good faith, the agent acting within the scope of his authority cannot be prejudiced thereby.

The record discloses objection was made as to assignment of Mrs. Enyart's claim to plaintiff. However, the question as to assignment

is not presented in defendant's assignments of error and is not before us for review.

The case is shown to have been well tried and finding no reversible error, the judgment is affirmed. All concur.

### On Motion for Rehearing.

SHAIN, P. J.—The defendant, appellant herein, filed its motion for rehearing wherein it is contended that the opinion handed down by this court at its April call, 1938, is in conflict with our various decisions of the supreme and appellate courts of this State.

Most of the opinions cited were cited in defendant's original brief, and received careful consideration by this court before our opinion was handed down. Other opinions are now cited of similar import as those cited in the original brief. In this opinion on rehearing we will not undertake a rediscussion of the cases that are again cited for our consideration. Neither will we undertake a general discussion of new cases cited which are of the same purport as cases considered by the court on the hearing of the case. However, we deem it advisable to call attention to same matters that clearly distinguish the case at bar from the cases cited.

In the case cited by defendant, Bennett v. Royal Mutual Life Ins. Co., 112 S. W. (2d) 134, and others of similar import, there is discussed the well-established rule that one dealing with an agent must make inquiry and discover scope of the agents authority. The above class of cases have no application when the scope of the agent's authority is shown by the written contract between the agent and the company's, as is shown in the case at bar. The question of apparent authority is not herein involved.

In this connection, we state that the defendant, by its brief herein, shows a misconception of the opinion handed down by the court. The defendant asserts that, "The Court has held, however, that although Shelton was without actual authority to make a contract of insurance for defendant, nevertheless, his knowledge, acts and conduct operated to estop the defendant to deny the issuance of a policy of insurance."

This court made no such declaration. We but held that Shelton's knowledge of the application for insurance and collection of advance premium was, under his written authority, imputed to defendant. Further, this court held that the company having such knowledge, that thereafter its acts and conduct, including delay and failure to return premium, etc., become facts to be considered by the jury in determining the question of estoppel.

There is distinction between the cases cited and the case at bar, in that in cases cited there were issues raised in the answers in said cases that were affirmative in character. In the case at bar the defendant's answer does not by any affirmative pleading or any alterna-

tive pleading raise a single issue. Not content with a general denial, the answer proceeds by specifically denying the existence of every fact in plaintiff's petition that is alleged as a cause of action. There is no allegation in defendant's answer that tends to controvert the fact that the allegation in plaintiff's petition, if true, places liability upon the company. With this state of pleading, defendant throughout the trial urged objections to evidence offered in proof of the facts which, if true, place liability on defendant.

Defendant in effect denied by its answer that it was an insurance company authorized to do business in Missouri, and with an authorized agent in Missouri. However, upon request the defendant produced the written contract with its agent, and produced several forms of blanks used by the company in taking application for insurance, and also its blank form for medical examination report.

There are no admissions made in defendant's answer, and no affirmative allegation of any kind, that, if true, defeats or tends to defeat plaintiff's cause of action.

The defendant, specifically denying that any application was ever made or signed by alleged insured or that any premium was ever paid by him, in the progress of the trial seeks to bind the alleged insured by the express terms of an application, the existence of which it denies. Further, denying the payment of any premium, the defendant urges no liability, based upon provisions of application of which it denies the existence.

In our research we have found no reported case wherein the issues were joined as they are joined in the case at bar. There is no case cited by defendant wherein there is shown a joinder of issues that even bears close analogy to the issues as joined in the case at bar.

We conclude, for the reason stated, that there is not and cannot be conflict with any opinion of the Supreme Court or with any of the Courts of Appeal.

Rehearing denied. All concur.