PAULINE NICHOLS, Appellant, v. JERRY JOSEPH BRESNAHAN.—No. 40453.—212 S. W. (2d) 570.

Division Two, June 14, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, July 12, 1948.

*Milton F. Napier* and *Louis E. Zuckerman* for appellant.

*David A. McMullan* for respondent; *Doris J. Banta* of counsel.

[571]. BARRETT, C.—About 1:30 A. M., June 15, 1944, the appellant, Pauline Nichols, left her employment at the Fairgrounds Hotel and started walking across Natural Bridge Avenue, intending to board a bus on the north side of the street. The defendant, Bresnahan, driving his Chrysler automobile from the east, hit her when she was near the white center line of the street. Upon a second trial for damages for her resulting injuries a jury found for the defendant.

The plaintiff alleged in her petition that she was struck and injured "through the willfulness and wanton recklessness of defendant." The willful and wanton reckless acts of the defendant were alleged to be that he operated his automobile in violation of a city ordinance in that he "willfully, illegally and recklessly drove and operated his said automobile at a rate of speed between sixty and seventy miles per hour, which was excessively dangerous and wanton recklessness under the circumstances and constituted a willful violation of the provisions of said ordinance and a willful and wanton reckless disregard of the safety, life and limbs of persons, including plaintiff, . . . ." It was alleged that he "willfully, recklessly and in wanton disregard of the life and limbs of persons" drove and operated the automobile at a greater speed than he could stop after he was able

to discover persons in the street with the aid of the headlights on his car. It was charged that the defendant "did willfully, recklessly and with wanton disregard for the life and limbs of the plaintiff" operate his automobile at the excessively high and dangerous speed of sixty or seventy miles an hour "toward, against and upon the plaintiff" and that "said acts of defendant were willful, wanton and [572] malicious, in this, that when defendant saw plaintiff crossing said Natural Bridge Avenue as aforesaid, defendant intentionally and wrongfully attempted to pass in front of and across the line of the path in which plaintiff was crossing" without warning and without slackening his excessive speed. Her instructions likewise submitted whether the defendant's acts and conduct, under the circumstances, were "reckless, wanton and willful." In addition the plaintiff submitted and the court gave an instruction defining "reckless," "willful" and "wanton." In part this instruction defined the terms as meaning "the doing of an act in reckless disregard for the safety of others when from a knowledge of surrounding circumstances and existing conditions *the person charged* must have known his conduct would naturally or probably result in injury to others and such want of care and want of regard for the rights of others *as to imply a conscious disregard and indifference to the attendant consequences,*" an omission or act of such character "as to show on the part of such person a reckless disregard for human life or limb."

The plaintiff claimed and her evidence was to the effect that after she was in the street she saw the headlights of the plaintiff's car "coming down the center of the white line," "coming direct for me out of—he was coming at desperate speed all the way just straight on me and all I could do was just to pick up a little and try to run as fast as I could." And, "it seemed like his lights were following me . . . they were right on top of me all the time; the faster I run the more they were on me." The defendant's speed was estimated to be sixty-five miles an hour by her witnesses and the inference was that he was about to run away after he struck her.

The defendant testified that he had stopped at Grand Avenue for a stop-light and then proceeded on across Natural Bridge at a speed of twenty or twenty-five miles an hour when "about five or six feet in front of me suddenly the form of a person appeared in my headlights." He said, "it seemed as though somebody came right in front of my headlights and like the woman was turning to go south and changed her mind and started running north, and then the impact," and he applied his brakes and stopped within twenty-five or thirty-five feet. After he saw the appellant in the street there was neither time nor space in which to signal or avoid hitting her.

Upon this appeal the plaintiff claims that the jury's verdict is so contrary to the law and the evidence that this court should set it aside and grant her a new trial. It is contended that the evidence

conclusively shows that the defendant violated the city ordinances and the laws governing the operation of motor vehicles (Mo. R. S. A., Secs. 8383, 8386 (c), (e), (m), (n) ) and that, therefore, "gross negligence" is demonstrated. The facts are pointed to and it is even argued that they conclusively demonstrate willful, wanton and reckless conduct.

But as of course, upon this record, these assignments of error are not open questions in this court. The weight of the evidence and the credibility of the witnesses was for the jury. Aly v. Terminal Railroad Assn., 342 Mo. 1116, 1124, 119 S. W. (2d) 363, 366. It was for the trial court alone to say whether the jury's verdict was against the weight of the evidence. Stubblefield v. Federal Reserve Bank of St. Louis, 356 Mo. 1018, 204 S. W. (2d) 718, 721. "The burden was not on the defendant, but was on the plaintiff to make out the case stated in his petition. In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached." Cluck v. Abe, 328 Mo. 81, 84, 40 S. W. (2d) 558, 559. In this case, as the brief resume of the evidence discloses, there was conflicting evidence in support of the conflicting theories as to the nature and cause of the accident and injuries [573] and we are necessarily concluded by the jury's verdict.

We have set forth some of the evidence, briefly noted the instructions and quoted from the petition because of the appellant's claim that there was error in the giving and refusal of certain instructions. While the appellant now attempts to argue that there was "gross negligence" it is plain beyond question that the theory of her case, throughout the trial, was not negligence but willful, wanton and reckless conduct. Negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe a prescribed standard of care (52 Am. Jur., Sec. 20) while a willful, wanton reckless injury is another kind of tort, an intentional injury often based upon an act done in utter disregard of the consequences. 52 Am. Jur., Secs. 22, 23; 38 Am. Jur., Secs. 4, 5. Reckless conduct may be negligent in that it is unreasonable but it is and must be something more than unreasonable, "it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent." 2 Restatement, Torts, p. 1294. "The actor's (defendant's) conduct is in reckless disregard of the safety

of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.'' 2 Restatement, Torts, Secs. 500, 501. The two kinds of tortious conduct differ not only in the degree of the actor's mental state but in the substantial fact and right that contributory negligence is no defense to most instances of willful, wanton, reckless injury. 2 Restatement, Torts, Secs. 481, 482. As we have indicated, willful, wanton, reckless conduct may involve and include negligence but in this case, unlike in Agee v. Herring, 221 Mo. App. 1022, 298 S. W. 250, there was neither pleading nor claim of negligence in addition to the claim of wanton recklessness. It is possible to have a cause of action for a wanton tort which does not in any manner involve negligence. Forney v. Geldmacher, 75 Mo. 113. In short, the sole and only theory of liability in this case was willful, wanton, reckless conduct as it was pleaded, defined and attempted to be demonstrated by the plaintiff.

The appellant did not choose to rely upon breach of the statutory standard of care (Mo. R. S. A., Sec. 8383) or upon breach of any of the duties imposed by law on the operators of motor vehicles (Wright v. Osborn, 356 Mo. 382, 201 S. W. (2d) 935, 938), and the consequence to her now is that she may not complain of the court's failure to give instructions based upon mere negligence or defining the duties of operators of motor vehicles. The issue was willful, wanton, reckless conduct as defined by the plaintiff and not negligence. It was for this reason that the trial court properly refused instructions defining the highest degree of care. In Agee v. Herring, supra, and Young v. St. L. I. M. & S. Ry. Co., 227 Mo. 307, 127 S. W. 19, negligence was relied upon and involved as well as wanton recklessness. The assignment that the court erred in refusing appellant's instruction No. 9 is neither briefed nor argued and is therefore deemed abandoned. Petty v. Kansas City Public Serv. Co., 355 Mo. 824, 829, 198 S. W. (2d) 684, 685.

The appellant contends that the court also erred in giving respondent's instructions five and six. As we have indicated, the appellant's instructions hypothesized a finding of ''reckless, wanton and willful'' conduct. These terms were defined and, among other things, it was said that they meant the doing of an act under circumstances that ''*the person charged* must have known his conduct would naturally or probably result in injury to others and such want of care and want of regard for the rights of others *as to imply a conscious disregard and indifference to the attendant consequences, . . . a reckless disregard for human life or limb, . . .* '' Instruction No. 5 is as follows: ''The court instructs the jury that in order to find the

defendant *guilty* of wilful or intentional wrongdoing you must find and believe from the evidence that the defendant consciously intended to strike and injure [574] plaintiff, or was *guilty* of wanton or reckless conduct, exhibiting a disregard or conscious indifference to the consequences." Instruction No. 6 is a burden of proof instruction: "The court instructs the jury that the burden of proving the defendant *guilty* of wilful, wanton and reckless conduct, resulting in injury to plaintiff, rests upon the plaintiff by a preponderance, that is, the greater weight of credible evidence, and unless you find and believe that she has sustained this burden you will find in favor of the defendant." The appellant singles out and seizes upon the word "guilty" and urges that the effect of its use was to lead the jury to believe that the defendant was being tried for a criminal offense thus increasing her burden of proof and misdirecting the jury. Again it argued that the gist of the action was negligence and therefore it was error to give these instructions.

We have previously disposed of the latter claim by demonstrating that the gist of the action was wanton, willful, reckless conduct and not negligence. It is arguable that the plaintiff's theory more closely resembles criminal culpable negligence (State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877) than it does civil negligence. In any event the two instructions and their effect are not comparable to the force and effect of the instructions in Nelson v. Evans, 338 Mo. 991, 93 S. W. (2d) 691, a case submitted upon negligence only. We have underscored from the appellant's instructions the words "the person charged" and "as to imply a conscious disregard and indifference to the attendant consequences, . . . a reckless disregard for human life or limb" because they plainly indicate and connote something more than negligence. It is possible that they do indicate "a charge," certainly they indicate a "conscious disregard" for life and limb. It may be assumed, in some circumstances, that the instructions would be erroneous. But in the circumstances of this case it may not be said, in any event, that they were so prejudicially erroneous as to materially affect the merits of the action or the plaintiff's cause. Mo. R. S. A., Secs. 847.123, 847.140(b); Supreme Court Rule 1.28. The mere use of the word "guilty," when used in the proper connotation, is not of itself error. Bradley v. Becker, 296 Mo. 548, 246 S. W. 561; Agee v. Herring, supra.

Accordingly the judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. *Leedy* and *Ellison, JJ.,* concur; *Tipton, P. J.,* not sitting.