J. D. STREETT & CO., Inc., a Corporation, Appellant,

v.

Arthur C. BONE, a/k/a "Red" Bone, d/b/a Frontier Oil Co., Respondent.

No. 47649.

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

Cobbs, Armstrong, Teasdale & Roos, by Edwin M. Johnston, Walter M. Clark, and Bruce E. Woodruff, St. Louis, for appellant.

Roberts & Roberts, Raymond R. Roberts, Farmington, for respondent.

ELMO B. HUNTER, Special Judge.

This is an appeal from a judgment for defendant in a suit by plaintiff, J. D. Streett & Co., Inc., on an open account wherein defendant, Arthur C. Bone, purchased merchandise from plaintiff for use and sale in his service station operation.

Plaintiff's appellate contentions are: (1) That the trial court abused its discretion in overruling plaintiff's motion for a new trial in that the greater weight of the evidence was entirely against defendant, and (2) that in any event this court under the "plain errors" rule should order a new trial.

Plaintiff's suit was filed on April 11, 1958. The case was tried on an amended petition filed February 10, 1959. The original petition pleaded certain invoices totaling $25,170.57 on which plaintiff claimed only $6.55 had been paid and sought judgment for $25,164.02. The amended petition alleged that plaintiff had at the request of the defendant furnished him with merchandise of the value of $267,567.94; that defendant had paid only $242,403.02 and had refused to pay the balance of $25,164.02. Defendant's answer was a general denial.

The trial on March 20, 1959, was to the jury. Reymond Hempen, Secretary and Comptroller of plaintiff, and defendant Arthur Bone were the only witnesses.

Mr. Hempen testified: From about September 15, 1955, until July 25, 1958, plaintiff provided defendant with gasoline, oil, antifreeze and other such products for the use of defendant in operating his filling station under the name of Frontier Oil Company. The items furnished were charged to defendant on an open account and had a total value of $267,567.94. Plaintiff received payments for these sales in the amount of $242,403.92, and this sum had

been applied to defendant's account leaving a balance due of $25,160.72. It was plaintiff's practice to have defendant or his employee sign a manifest to acknowledge delivery of the items named therein. Hempen produced invoices going back to September 1955, but commenced his testimony with those concerning gasoline deliveries dated April 3, 1956, and thereafter to May 2, 1956. At that point he testified: "Between the date April 3, 1956, until the last sale to Arthur Bone in 1958 the total gasoline purchased by him amounted to 1,000,673 gallons. Q. There were other purchases besides that? A. There were other purchases besides that which included antifreeze and some maps and some oil. Q. What was the total value of those purchases? A. * * * I could give you the total value of the purchases in the beginning but I do not have the purchases from that April the 3rd period"—that he could give only the total of all items from September 15, 1955, to July 25, 1958, shown on Exhibit A attached to the petition, which total was $267,567.94.

On cross-examination Hempen stated plaintiff company had changed from manual bookkeeping to automatic machine bookkeeping in April 1956. He was asked if in that transition a number of mistakes were made in Mr. Bone's account and others. He answered, "There were mistakes made in, you might say, in whose account was credited. * * * Well, there can be errors made on charges as well as credits. * * * There were mistakes made, yes, sir. * * * But principally on charges, not on credits." Hempen while being cross-examined as to a particular item of $141.60 explained that at that time his company was shipping c. o. d., to defendant, and that its Cape Girardeau Terminal computed the charges at delivery at $144.90, which was paid and that later "when the invoice was actually made we found that it should have been $141.60. The difference * * * was credited to Mr. Bone's account."

He further testified that on May 7, 1957, Mr. Bone owed $35,003.05. Referring to the invoices (manifests) defendant's counsel stated, "I am going to start with May 7, and take in a good many of them," and inquired about numerous ones as to whether they had been signed by defendant or his employee, and paid for. On redirect Hempen was asked, "Do you have any record as to show delivery was made of that merchandise? A. Yes, sir, we have signed manifests. * * * I have them right here." Defendant's counsel then stated, "I'll admit, for the record, that he has in his possession there signed receipts for each one of those but that they were not attached to the invoices." Thereafter, plaintiff's counsel stated, "This is an awful lot of records. I don't want to have them identified individually but I'd like to offer them in evidence. By the Court: Are these statements of invoices supporting plaintiff's Exhibit A that was attached to the petition? Answer (by plaintiff's attorney): That's right. By the Court: They may be admitted into the record." And at that point plaintiff rested.

Defendant testified: Mr. Hempen had told him in the change over in the bookkeeping system that there had been a lot of mistakes made "in the accounts, including mine, and it would be corrected. Q. Now, was that ever later corrected with you? A. No, sir." Plaintiff's then attorney (who is not plaintiff's counsel on this appeal) on May 7, 1957, told him he owed only $92.40. The attorney showed him a list of what had been purchased from May 7, 1957, to November 4, 1957, and told him he had paid during that period only $6.55. Defendant advised the attorney he had cancelled checks to show what had been paid and that "I (defendant) knew it was more than $6.55." He offered to show these checks to plaintiff's lawyer who told him just to bring them to court.

Defendant with his lawyer, during the trial, ran off these mentioned checks of May 7, 1957, to November 4, and they totaled $38,246.64. Defendant stated that these mentioned checks represented pay-

ment for all of the purchases he had made from plaintiff from May ·7, 1957, to November 4, 1957, and that he owed plaintiff nothing—whether it was charged or paid for on delivery.

On cross-examination defendant reiterated Hempen told him that at the time of the bookkeeping change errors had been made in his account, and in the accounts of others in an undetermined amount. Thereafter an effort was made by plaintiff's counsel on further cross-examination to match up the checks defendant had with credits on the books of plaintiff. Several of the checks were dated after a credit in the same amount appeared in the books. Defendant stated he did not have all his checks with him—just all he was able to find at this time, that he was just a small operator with an eighth grade education, who had only part time bookkeeping services.

On rebuttal Hempen was asked to take each check and ascertain if his records showed that credit was given for them. Objection thereto was sustained on his statement he could not identify any particular check, nor any particular check as being the credit. Thereafter, he was asked to look at the statement (Exhibit A) attached to plaintiff's petition to see if it showed a credit of May 7th for $4,000. On objection by defendant's counsel that this would be a conclusion, plaintiff's counsel stated he was trying to show the amounts on these checks had been credited to the account. At that point the court stated, "Well, he did not deny it. It is not rebuttal at this time; merely repetition. (By plaintiff's counsel) That was the only purpose. I had understood that he had denied that he had been given credit for these checks. By the Court: I didn't so understand it. (By plaintiff's counsel) Then I have nothing further."

The jury returned its verdict for defendant, and the court overruled plaintiff's motion for new trial.

The only assignment of error contained in plaintiff's motion for new trial which is urged on this appeal is that the trial court abused its discretion in failing to grant a new trial for the reason the greater weight of the evidence was entirely against defendant because defendant completely failed to controvert in any substantial respect the prima facie case established by plaintiff.

Defendant's response is (1) the trial court did not abuse its discretion because (a) the jury had the right to disbelieve plaintiff's evidence even when uncontroverted, and (b) the evidence was conflicting and subject to more than one inference, and there was sufficient evidence for the jury properly to find for defendant, and (2) the appellate court is without authority to rule on the issue of whether or not the verdict is against the weight of the evidence.

Plaintiff acknowledges that in an action on an open account the account is not self-proving, and that it has the burden of proof as to every essential element necessary to establish its cause of action, with the burden of proof on defendant only as to the affirmative defense of payment. Thus, plaintiff tacitly concedes that as a part of its burden it must prove the correctness of the account and the reasonableness of the charges. See, 1 C.J.S. Account, Action on § 16d, p. 608; S. J. Travis Co. v. Means, Mo.App., 192 S.W. 119.

Ordinarily an account is proved by proving each item thereof including date, correctness of each item contained in the account, the charge made and the reasonableness thereof. Often this is accomplished through the introduction of record testimony consisting of the original book of entry with a showing that the entries were contemporaneously and correctly made with the transaction.

Plaintiff, however, did not produce such book but relied on the oral testimony of its one witness supported by certain of its invoices. It conceded defendant had paid $242,403.02, and sought to establish that the total amount and value of the merchandise it had provided defendant was $267,567.94.

Although this account extended over a long period of time the evidence dealt primarily with the account from May 7, 1957, to November 4, 1957. Hempen testified the balance owed on May 7, 1957, was $35,003.05 according to his records which were not introduced.

Defendant denied owing anything and made some effort, as described, to show (1) plaintiff had admitted uncorrected errors in its bookkeeping of the account, and (2) that he had paid more than he was credited with during the period from May 7, 1957, to November 4, 1957. His counsel's admission that certain of the invoices were signed by defendant or his employee is not an admission of the correctness of the entire account sued on.

The essence of plaintiff's position on this appeal is set out on page 13 of its brief: "Thus, Appellant completed the establishment of a prima facie case by introducing evidence of all elements necessary to prove the account. Appellant submits that unless this evidence was controverted in some substantial manner by Respondent it was an abuse of the court's discretion to allow the verdict for the Respondent to stand."

Assuming but without agreeing with plaintiff that defendant did not have controverting evidence of substance, we are nonetheless constrained to say that plaintiff has misconceived the applicable law.

Here, for instance, the jury may have disbelieved the correctness of the account sued for by plaintiff. It may not have believed the correct total amount of the purchases was $242,403.02 and the testimony of errors made in defendant's account by the change over to machine accounting and other evidence of defendant even though general or vague may have encouraged it to do so.

■ It is a well settled general rule that as to those matters on which plaintiff carries the burden of proof even though the plaintiff makes a prima facie case through the use of oral testimony or oral testimony and documentary evidence, and even though the defendant offers no testimony to controvert the same, the jury has the right to disbelieve plaintiff's evidence and to return its verdict for the defendant. See Conser v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 266 S.W.2d 587, 590; Baugh v. Life & Casualty Ins. Co. of Tenn., Mo.Sup., 307 S.W.2d 660, 664–665.

■ True, the trial court in the exercise of its sound judicial discretion may set that verdict aside as against the weight of the evidence. Cf., Ritzheimer v. Marshall, Mo. App., 168 S.W.2d 159. However, in the exercise of that discretion it may determine not to set the verdict aside.

In the Baugh case, supra [307 S.W.2d 664], the general rule for documentary evidence to be conclusive is stated that "it must be an instrument or record having legal efficacy to which the one sought to be bound is in some way a party, or the truth of which he vouches for, either expressly or in legal effect, or is estopped to deny." There is no documentary evidence of that type in the case before us.

In Dixon v. Edelen, Mo.Sup., 300 S.W. 2d 469, 472, we had before us a contention similar to the one now before us. Speaking through Judge Leedy, we said in considering the contention there was no substantial evidence to support the verdict: "We need not develop the matter at length. It is sufficient to say that such a verdict is not required to have evidentiary support, but rests upon a finding by the jury against the party having the burden of proof. Cluck v. Abe, 328 Mo. 81, 84, 86, 40 S.W.2d 558, 559, is a leading case on this question, and it was there said: 'Plaintiff's first contention is that the verdict in defendant's favor is not supported by substantial evidence. The sufficiency of the evidence to support the verdict in defendant's favor is not an open question in this court; therefore we need not concern ourselves about what the evidence showed in that regard. The bur-

den was not on the defendant, but was on the plaintiff to make out the case stated in his petition. In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. * * * The only claim made respecting such evidence is that it was not sufficiently substantial to support the verdict in defendant's favor. Whether or not the verdict was against the weight of the evidence was a proper question for the trial court, but, for reasons heretofore stated, this court has no authority to determine it.' Connole v. East St. L. & S. R. Co., 340 Mo. 690, 102 S.W.2d 581; Giles v. Moundridge Milling Co., 351 Mo. 568, 173 S.W.2d 745; Wiener v. Mutual Life Ins. Co., 352 Mo. 673, 680, 179 S.W.2d 39, 43; Nichols v. Bresnahan, 357 Mo. 1126, 1130, 212 S.W.2d 570, 572."

■ Thus, it is the rule that where the burden of proof is on the plaintiff who relies on oral testimony, or upon documentary testimony that is not legally conclusive, or a mixture of both, to establish all or some of the essential elements of his cause of action a verdict in the defendant's favor is not required to have evidentiary support but rests upon a finding by the jury against the party having the burden of proof, and after the trial court exercises its discretion by overruling a motion for new trial, the appellate court, on the sole contention of abuse of discretion thereby, will not entertain the contention. See, Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570, 572; Stubblefield v. Federal Reserve Bank of St. Louis, 356 Mo. 1018, 204 S.W.2d 718; Small v. Wegner, Mo.Sup., 267 S.W.2d 26, 50 A. L.R.2d 170. We find no merit in plaintiff's first contention.

Plaintiff's only other contention is that this court should order a new trial in that "plain errors" were committed by the trial court because it "so interfered with the introduction of appellant's evidence, commented thereon and otherwise favored the respondent as to influence the jury in respondent's favor and substantially prejudice the rights of appellant." Plaintiff refers us to numerous incidents during the trial and suggests that individually or collectively they constitute plain error. Plaintiff frankly acknowledges that these incidents were not objected to at the trial and were not as such mentioned in the motion for new trial. Plaintiff concedes that these alleged errors have not been properly preserved for appellate review and that this court may reach them only if they constitute plain error under our Rule 3.27, 42 V.A.M.S

In response, defendant undertakes to demonstrate from the evidence (1) that there was no plain error committed, and (2) that the various actions of the trial court to which plaintiff refers in fact did not prejudice plaintiff but, if anything, were against defendant.

Our Rule 3.27 provides: "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

The record has been carefully reviewed to see if these mentioned incidents within the meaning of Rule 3.27 do constitute plain error, affecting substantial rights resulting in manifest injustice. We find that they do not. It would serve no useful purpose to set out each mentioned incident, some of which appear above in the quoted testimony, and would result only in lengthening this opinion.

The judgment of the trial court is affirmed.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.