Goldie VOSS (Plaintiff), Appellant,

v.

AMERICAN MUTUAL LIABILITY INSUR-
ANCE COMPANY, a Corporation
(Defendant), Respondent.

No. 30464.

St. Louis Court of Appeals.
Missouri.
Dec. 20, 1960.

William P. Carleton, Melvin L. Hertzman, St. Louis, for plaintiff-appellant.

Heneghan, Roberts & Cole and George E. Heneghan, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

By this action plaintiff sought to recover actual damages of $5,000 and punitive damages of a like amount. The grounds alleged were that the defendant, although it had previously agreed to insure plaintiff under an automobile liability policy, refused to acknowledge to the Safety Responsibility Unit that it was her insurer, as a result of which plaintiff lost the right to drive an automobile for one year. Plaintiff had a verdict and judgment for actual damages of $2,400 and punitive damages of $2,000. Thereafter, the court sustained defendant's appropriate after-trial motion, set aside the judgment, and entered judgment in favor of defendant. In the alternative, the court also sustained defendant's motion for a new trial, on the grounds error was committed in giving certain specified instructions requested by plaintiff. Plaintiff has duly appealed.

The notice of appeal in this case was filed on September 18, 1959, at a time when our monetary jurisdiction was limited to matters in dispute involving $7,500 or less. Defendant challenges our jurisdiction of this appeal on the grounds that

the amount in dispute on appeal is the sum prayed for in plaintiff's petition, $10,000, it being contended that when the judgment for plaintiff was set aside, and judgment entered for defendant, the amount in dispute reverted to the sum prayed for in plaintiff's petition. Langhammer v. City of Mexico, Mo., Mo., 327 S.W.2d 831 and Mosley v. St. Louis Public Service Company, Mo., 301 S.W.2d 797, are cited in support of defendant's argument. The facts in those cases are totally dissimilar to those in the instant case, and the authorities cited furnish no support for defendant's position. What the plaintiff seeks here is the reinstatement of the judgment in her favor for $4,400. That, then, is the amount in dispute. The facts in the instant case are precisely the same as those in Reaves v. Rieger, 360 Mo. 1091, 232 S.W.2d 500, in which the Supreme Court held contrary to defendant's contention. On the authority of that case we rule that we have jurisdiction.

■ Under the circumstances of this case, we must consider only the evidence most favorable to the plaintiff, together with the reasonable inferences to be drawn therefrom. Le Page v. Metropolitan Life Ins. Co., Mo., 314 S.W.2d 735. Viewing the record in that light, we find the pertinent facts to be that early in 1958 plaintiff purchased a used 1949 Chevrolet car. Plaintiff sought to obtain liability insurance to cover both her operation of the car and that of her brother, Bill Mayfield, then 17 years of age, who lived in the same household with plaintiff and their mother. On March 21, 1958, plaintiff applied to an insurance company referred to in the evidence as All State, and was issued a 30-day binder, but on March 28, 1958, that company rejected her application because of Bill's age. Plaintiff testified that she then telephoned several other insurance companies, which declined to receive an application when they learned that Bill would be permitted to drive the car.

On April 21, 1958, plaintiff telephoned the St. Louis office of defendant, was assigned to a J. F. Gallagher, and an appointment was made for Gallagher to call upon plaintiff at her home on April 23, 1958. Gallagher called at the appointed time, and plaintiff informed him that she wanted coverage of " * * * just the amount that covered responsibility," which Gallagher advised her would be $5,000 for an injury to one person, $10,000 for injuries to two or more persons, and $5,000 for property damage. Gallagher also informed plaintiff that the premium would be $101 per year, and it was agreed that the premium would be paid in three installments of $33.67 each. According to plaintiff, Gallagher asked her various questions regarding her age, occupation, marital status, description of her automobile and other matters, for the purpose of filling out an application form, to all of which questions, she testified, she answered truthfully. Gallagher then gave plaintiff the application to sign, but she did not read it, other than the part which stated the amount of coverage and the time when the policy would be effective, because, plaintiff stated, she assumed Gallagher had filled out the form in accordance with the information she had given him. Plaintiff obtained a check from her mother for $33.67, payable to defendant, and gave it to Gallagher, and the latter made out a receipt on the back of one of his business cards, which he signed and delivered to plaintiff. Dated April 23, 1958, the receipt read "Received of Mrs. Goldie Voss check for Thirty Three and Sixty Seven cents a deposit on auto policy to be issued. Balance—2 payments of $33.67."

Plaintiff then inquired of Gallagher when she would receive her policy, and was told that she would receive it in about two weeks. As Gallagher was about to depart plaintiff told him that she was glad to get the application in because she had been afraid to drive her car without insurance, and Gallagher assured plaintiff that she had nothing to worry about; that she was covered then; and that she would have her policy in two weeks. Plaintiff's brother

Bill, who was present during the interview, corroborated plaintiff's testimony. As Bill expressed it, Gallagher said that the coverage would be effective "Right from the time he gave us the receipt." Not having received the policy when the two weeks were up, and as she worked during the day, plaintiff asked her brother to contact the defendant. Bill Mayfield testified that he telephoned Gallagher about May 7 or 8, and inquired where the policy was, and that Gallagher assured him the policy would be issued, that he was covered, and that he had nothing to worry about.

On Sunday, May 25, 1958, while driving her car southwardly on U. S. Highway 67, about 3 miles north of Bonne Terre, plaintiff was involved in a collision with a car preceding her when both sought to avoid being hit by a third car, going in the opposite direction, which was straddling the center line. Plaintiff and her young daughter were injured, and plaintiff's car was damaged. Defendant developed, on cross-examination, that at some unspecified later date plaintiff received a settlement from the insurance company which insured the "culprit."

The next day, May 26, plaintiff telephoned Gallagher to report the accident. According to plaintiff, Gallagher did not take the report of the accident, and instead told plaintiff he would call her later. No call was received, but plaintiff received a letter from defendant, signed by Gallagher, dated and postmarked June 3, 1958, advising her that the defendant had declined plaintiff's application for automobile insurance coverage and that it was enclosing its check for $33.67 to refund plaintiff's deposit. In the interim, plaintiff had employed counsel, and in accordance with his advice, on June 2 a report of the accident was made to the Safety Responsibility Unit of the Department of Revenue, and a copy of that report was mailed to the defendant on June 3, 1958. It appears from the record that thereafter plaintiff received letters from lawyers representing other persons in-

volved in the collision of May 25, and that plaintiff's counsel wrote to defendant. None of the letters of plaintiff's counsel to defendant were introduced in evidence. However plaintiff did introduce two letters from defendant to plaintiff's counsel. The first, dated June 18, 1958, reads: "With reference to your client, Goldie Voss, an application for automobile liability insurance was submitted to us accompanied by the customary deposit. Her application was not accepted and the deposit has been returned. At no time was coverage bound or any policy issued." By its second letter, dated June 19, 1958, defendant returned to plaintiff's counsel letters from other attorneys, presumably those received by plaintiff from counsel for other persons involved in the collision. It should be added that plaintiff returned the refund check to defendant.

Apparently the matter was quiescent until plaintiff received a letter from the Safety Responsibility Unit, dated August 7, 1958, in which she was advised that the insurance Form (SR–21) completed by plaintiff as a part of her accident report had been submitted to the insurance company she had named as her liability insurance carrier, and that "SR–21 has been returned from the the American Mutual Liability Ins. Co. stating, 'We do not insure.' " Subsequently, plaintiff received a second communication from the same Unit, dated August 11, 1958, advising her that unless security in the sum of $1,375 was deposited with the Director of Revenue, plaintiff's privilege of operating an automobile, and that of using the motor vehicle owned by her, was suspended as of August 26, 1958, and that her license, registrations and plates must be surrendered on or before that date, or enforcement would be accomplished by a Missouri Peace Officer. Plaintiff testified that she was financially unable to deposit the sum of $1,375, and to avoid the embarrassment of having the police call at her home for her driver's license and the license plates, she authorized her counsel to surrender them.

The testimony of Gallagher, defendant's only witness, contradicted that of plaintiff and her brother in all material respects. In particular, he testified that when he learned that Bill Mayfield would operate plaintiff's car he informed plaintiff that all he could do was to take the application and turn it in to his company, which would make an investigation and determine whether it would accept the application; that he informed the plaintiff she would have no insurance coverage until she received either a written binder or the policy; and that plaintiff agreed to that. He was permitted to testify, over plaintiff's objections, that he had no authority to issue a binder if certain conditions prevailed, among them being if the car was to be operated by a male driver 25 years of age or under, or if the applicant had been rejected by another company. He was also permitted to read, over objections, a manual of instructions issued by defendant, placing similar restrictions on his acceptance of applications.

Gallagher further testified that when he reached the office the next day he filled out a form (not introduced), and gave it to the girl with a note not to mail the binder but to hold it in the office, because the insurance was not in force until accepted by the Underwriting Department; and that if he had not made such a notation the binder would have been mailed. He assumed that the clerical staff in his office mailed plaintiff's application on April 24, 1958, to the defendant's regional office in Lexington, Kentucky, where the policies for the St. Louis district are issued. The evidence shows that the check for $33.67 given by plaintiff to Gallagher was deposited by the defendant in a bank in Lexington on April 25, 1958, and that on May 1, 1958, it cleared the St. Louis bank on which it had been drawn. Gallagher testified further that there was delivered to his office, on Saturday, May 24, 1958, when it was closed, a notice from the Lexington office advising that plaintiff's application had been rejected, but that he didn't see the letter until he arrived at his office on Monday, May 26; that plaintiff telephoned him, before he called her, and asked whether her application had been accepted, and that he informed her the defendant had declined to accept it; and that plaintiff then told him about the accident in which she had been involved. He also stated that he told plaintiff that her deposit would be refunded; that he wrote the Lexington Accounting Office for the refund check; and that upon its receipt he sent it to plaintiff. On cross-examination Gallagher testified that he did not have any of the binder forms with him when he called on plaintiff, but that in any event he wouldn't have given plaintiff a binder.

The application introduced in evidence is a form containing various questions as to the applicant's name, age, occupation, a description of the automobile, and other matters, with spaces for the appropriate answers. It is sufficient for the purposes of this opinion to state that the application as completed showed that the policy period desired was from April 23, 1958 to April 23, 1959; that the coverage was to be $5,000 for bodily injury for each person, $10,000 for each occurrence, and $5,000 for property damage; that the total premium was to be $101, of which payment was received of $33.67, leaving a balance due of $67.33; that during the prior three years no insurance company had canceled any automobile insurance or declined to issue such insurance to the applicant or other operator of the automobile; and that the operators were listed as plaintiff, age 32, and Bill Mayfield, age 17, and the latter was shown as having completed a driver training course at Central High School. There was a sub-heading, "Method of Premium Payment" on the form, with various methods of payment stated, and a box in which to check the method selected. In plaintiff's application the box for "⅓ 30 days—⅓ 60 days—⅓ 90 days" was checked, and opposite the printed statement "Payment received with this application" there was filled in the figure "$33.67." The application was signed by the plaintiff, and by J. F.

Gallagher above the printed words "Sales Representative." Beneath the signatures was another sub-heading, "To Solicitors," containing additional questions, among which was "Have you bound coverage?" As introduced in evidence, the photostat of the application showed that the "No" box opposite that question contained a checkmark. However, plaintiff testified that none of the questions below her signature, including that relating to the binding of coverage, had been filled in at the time she signed the application on April 23, 1958.

Plaintiff contends that the court erred in setting aside the judgment in her favor, and in entering judgment for defendant, because she had made a submissible case in tort against the defendant. Her theory of her cause of action as pleaded in her petition and as stated in her brief is that the automobile insurance sought by her from defendant was in effect from April 23, 1958, the date on which she signed the application, and that it was at all times valid and binding on defendant; and that defendant committed a wrong as to plaintiff when it informed the Safety Responsibility Unit that it did not insure plaintiff. The major portion of plaintiff's brief is devoted to the first part of her theory, it being contended, first, that Gallagher, as the agent of defendant, acting within the scope of his authority, by his oral statements and the written receipt, agreed with plaintiff that the coverage sought would be effective immediately; and, secondly, that by retaining for an unreasonable length of time plaintiff's application and the premium she had paid, and by failing to issue the policy applied for or to reject the application within a reasonable time, without any justification or excuse, the defendant had thereby accepted plaintiff's application.

■ We think there can be no doubt that plaintiff offered substantial evidence of an agreement between herself and Gallagher that defendant was to be bound, from April 23, 1958, to insure plaintiff from liability, pending the issuance of the regular policy of insurance. The law is well settled that an insurance agent, acting within the scope of his authority, actual or apparent, may bind an insurance company by an oral contract of insurance. Swift v. Central Union Fire Ins. Co., 202 Mo.App. 419, 217 S.W. 1003, affirmed 279 Mo. 606, 216 S.W. 935; Corrigan v. National Motor Underwriters, 222 Mo.App. 113, 1 S.W.2d 845. Furthermore, the receipt given to plaintiff, stating that the policy was on an " * * * auto policy to be issued," as well as those parts of the application relating to the time, character and amount of coverage, and acknowledging "payment received $33.67," were amply sufficient to describe the nature, extent and cost of the insurance coverage immediately afforded plaintiff. Swinney v. Connecticut Fire Ins. Co. of Hartford, Mo.App., 8 S.W.2d 1090. Consequently, the question presented is whether Gallagher had the authority, actual or apparent, to have bound defendant.

On this issue plaintiff takes the position in her brief that Gallagher was what is known to the law of insurance as a general agent, that is, one who has the authority to issue, countersign, or make contracts of insurance on behalf of his principal, rather than a special agent, who is merely authorized to solicit insurance, deliver policies, and collect premiums but is without the authority to make contracts of insurance. Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441; Bennett v. Royal Union Mut. Life Ins. Co., 232 Mo.App. 1027, 112 S.W.2d 134. In support of her contention plaintiff points to a certified copy of a "Requisition," which she introduced, by which the defendant, as a foreign insurance company, certified to the Superintendent of Insurance that it had appointed Gallagher " * * * agent for the transaction of its authorized business * * * in Missouri * * *" and requested the issuance of a license to him. Plaintiff argues that this certification, standing alone, was sufficient evidence of Gallagher's authority to make and issue a valid binder, citing Section 375.200 RSMo 1949, V.A.M.S. That section provides that foreign insurance

companies admitted to do business in this state shall make contracts of insurance "* * * upon property or interests therein * * *" only by lawfully constituted and licensed agents. The insurance applied for by plaintiff was not on any "property or interests therein"; it was solely and only for automobile liability insurance, and the statute cited is therefore not applicable. Hill v. Metropolitan Life Ins. Co., 239 Mo. App. 219, 185 S.W.2d 76.

But an insurance company is bound by the acts of an agent acting within the scope of his apparent authority, or within the powers which it held out the agent as possessing, unless the limitations upon the agent's powers are known by or brought to the notice of the insured. Appleman, Insurance Law and Practice, Vol. 16, Sec. 8674; Distassio v. American United Life Ins. Co., 238 Mo.App. 279, 179 S.W.2d 610; Lanowah Inv. Co. v. John Hancock Mut. Life Ins. Co., 236 Mo.App. 1062, 162 S.W. 2d 307. We are of the opinion that there was ample evidence to make a submissible case as to Gallagher's apparent authority. There was no provision in the application giving notice of any limitation on Gallagher's apparent authority, such as are customary in applications taken by special agents and as were contained in the cases of Dickinson v. Bankers Life & Cas. Co., Mo.App., 283 S.W.2d 658 and Halbrook v. Atlas Life Ins. Co., Mo.App., 234 S.W.2d 628, cited by defendant. On the contrary, the application affirmatively indicated by the question "Have you bound coverage?" that Gallagher had actual authority to issue a binder. Furthermore, there was no provision in the application that coverage would not begin until a written binder or the actual policy was issued. The application form read "Policy period desired: From" and the blank was filled in by Gallagher, "April 23, 1958 to April 23, 1959." If the coverage was not to begin until a written binder or the policy was issued, it is difficult to understand why it was thus dated the day the application was taken. Also, the acknowledgment in the applica-

tion of "Payment received" of $33.67 in the application, and that the "Balance due" was $67.73 gave every indication of a partial payment and a remaining obligation on a presently existing contract. And, if anything further was needed to lead plaintiff to believe that Gallagher had the authority to immediately bind coverage, it was amply supplied by the phrase in the receipt she received acknowledging a deposit "* * * on auto policy to be issued. Balance—2 payments of $33.67."

But if any doubt remained of the scope of Gallagher's authority it was supplied by his own testimony, elicited by the defendant. He testified that he had instructed the clerical staff not to issue a binder to plaintiff and that if he had not done so one would have been mailed as a matter of course. Obviously, this demonstrated that Gallagher had the general authority to issue binders. The question on the form "Have you bound coverage?" confirms this. Defendant did not, in fact, dispute such general authority of Gallagher; its only contention was that because of the written restrictions placed upon him he could not issue binders when certain conditions existed, as where the applicant was a male driver under 25. But it has been uniformly held that in the absence of any evidence that an applicant had knowledge or was put on notice of such restrictions, the applicant is not bound by them, and is entitled to rely and act upon the agent's apparent and ostensible powers. Appleman, supra; Gaines v. Berkshire Life Ins. Co., 228 Mo.App. 319, 68 S.W.2d 905; Shelby v. Connecticut Fire Ins. Co. of Hartford, 218 Mo.App. 84, 262 S.W. 686.

As to plaintiff's second point, there is ample authority for the rule that an unreasonable, unwarranted and unexplained delay on the part of an insurance company in acting on an application, and in retaining the premium, may subject it to liability to an applicant who has been thereby misled, to his injury. 1 Cooley's Briefs on Insurance (2d Ed.), p. 596; Summers v.

Prudential Ins. Co. of America, Mo.App. 337 S.W.2d 562; Mathews v. New York Life Ins. Co., Mo.App., 128 S.W.2d 327; Fitzgerald v. Colorado Life Co., 233 Mo. App. 235, 116 S.W.2d 242; Zielinski v. General American Life Ins. Co., Mo.App., 96 S.W.2d 1059; Reed v. Prudential Ins. Co., 229 Mo.App. 90, 73 S.W.2d 1027; Mitchell v. American Mut. Ass'n, 226 Mo. App., 696, 46 S.W.2d 231. A review of those cases will disclose that the basis for the decisions has been by no means uniform. Some are on the grounds of estoppel to deny acceptance, others of a waiver of formal acceptance, while in Zielinski v. General American Life Ins. Co., supra [96 S.W.2d 1063], the term "waiver in the nature of an estoppel" is employed. The essential elements in all of them are that the delay was unreasonable and unjustified; that the applicant was misled; and that he was thereby injured. And the question of what is unreasonable delay is one of fact for the jury. Witten v. Beacon Life Ass'n, 225 Mo.App. 110, 33 S.W.2d 989. Plaintiff's evidence disclosed that her application and check were received by defendant on April 23; that she relied on Gallagher's assurance that the policy would be issued, made on April 23 and repeated in his telephone conversation with Bill Mayfield on May 7 or 8; that had she been advised, prior to being involved in the accident of May 25, that her application had been denied she would have obtained coverage elsewhere; that the accident occurred on that date; and that the defendant failed to inform her of its action on her application until May 26, when she attempted to report the accident. In the opinion of her expert witness, versed in the field of insurance and in investigating applications therefor, the usual length of time required to investigate and process an investigation of an application for automobile insurance in the St. Louis area was from 8 to 10 days. It will be recalled that she testified that All State had advised her of its rejection of her policy about a week after it was made. No evidence was introduced by defendant to at-

tempt to explain or justify the amount of time which elapsed between its receipt of plaintiff's application and premium, and the date when it was rejected. Appraising plaintiff's evidence in the light of the foregoing rules, it must be concluded that plaintiff likewise made a submissible case on this part of her action.

In reaching our conclusion on the issue of coverage we have not overlooked the contentions made in defendant's brief. In addition to its arguments regarding the scope of Gallagher's authority, actual and apparent, and defendant's denial of any undue delay in acting upon plaintiff's application, which matters we have already discussed, defendant also contends that plaintiff was bound by the written answers inserted in the application; and that because some of such answers were misstatements of the true facts, " * * * Even if respondent (defendant) had issued a policy of insurance, it would have been void ab initio and no damage was sustained by appellant (plaintiff)." What respondent particularly emphasizes are the answers "No exception" to the question of whether during the prior three years any other company had declined to issue automobile insurance to plaintiff; and the answer "Central High School" to the question of where Bill Mayfield had completed a driver training course. As plaintiff testified, All State had in fact declined to issue her a policy of automobile insurance, less than a month before she applied to defendant; and Bill Mayfield had not completed a driver's educational course at the the time the application to defendant was signed, although he was then taking such a course at Central High School. However, plaintiff also testified that she had informed Gallagher of the truth regarding these matters at the time he filled out the form, and that she did not read all of the application before she signed it because she assumed Gallagher had filled in the answers she had given him.

In support of its argument that plaintiff was bound by the answers in the application, that they were misrepresenta-

tions, and that any policy issued on them would have been void ab initio, defendant cites and discusses several cases involving applications or policies, principally Minich v. M. F. A. Mutual Ins. Co., Mo.App., 325 S.W.2d 56; Zielinski et al. v. General American Life Ins. Co., Mo.App., 96 S.W.2d 1059; Dickinson v. Bankers Life & Cas. Co., supra; and Halbrook v. Atlas Life Ins. Co., supra. All of these cases are distinguishable on the facts. None of them involved a factual situation where the applicant, as here, claimed that he had given the true information to the agent, and that he had signed the application without reading it or was aware that the agent, through fraud or mistake, had inserted answers which were misstatements. Most of those cases recognize the rule that " * * * Absent fraud or mistake one is bound by his written contract and an application as an offer is contractual in nature." Minich v. M. F. A. Mutual Ins. Co., supra, 325 S.W.2d loc. cit. page 57, by which is meant, of course, fraud or mistake on the part of the insurer or its agent.

■ There can be no doubt that the misstatements mentioned were material to the risk and grounds for avoidance of a policy, had one been issued, if such misrepresentations had been made by the plaintiff to Gallagher. But the true rule applicable to the facts in this case is that found in 45 C.J.S. Insurance § 729, where it is stated: "Although there is some authority to the contrary, the general rule is that where insured at the time of applying for the policy truthfully states to the agent the facts involved in the risk, or the agent otherwise knows the facts, and the agent, acting within his real or apparent authority, and without the actual or constructive knowledge or collusion of the insured, inserts in the application or in the policy mistaken or intentionally false statements, the insurer cannot set up such misstatements in avoidance of the policy provided, according to some authorities, the policy would have been issued and been binding if the true answers as given by insured were set forth in the ap-

plication. The rule applies whether the statements or answers are representations or warranties; and this is so although insured was present when the agent inserted the false statements * * *." This rule was quoted with approval by our Supreme Court in State ex rel. Bull Dog Auto Ins. Ass'n of Chicago v. Bland, 316 Mo. 559, 291 S.W. 499, 502, which pointed out that it is, in effect, an exception to the parol evidence rule. It has since been followed by all of our Courts of Appeal, Toler v. Missouri Ins. Co., Mo.App., 243 S.W.2d 788; Russell v. Southeast Missouri Mut. Fire Ins. Co., Mo.App., 146 S.W.2d 674; Sappington v. Central Mut. Ins. Ass'n, 229 Mo.App. 222, 77 S.W.2d 140; and so far as we are aware, the Supreme Court has continued to follow it. See Scott v. Missouri Ins. Co., Mo., 233 S.W.2d 660.

■ Furthermore, the defense of a material misrepresentation was not pleaded in defendant's answer, as is necessary in order to raise it, Christian v. Connecticut Mut. Life Ins. Co., 143 Mo. 460, 45 S.W. 268; Friedman v. State Mut. Life Assur. Co. of Worcester, Mass., Mo.App., 108 S.W.2d 156; nor were the facts necessary to sustain it submitted to the jury by the defendant by an appropriate instruction. Scott v. Missouri Ins. Co., supra.

But it does not necessarily follow that plaintiff made a submissible case merely because her evidence was sufficient to do so on the issue of coverage. Plaintiff is not suing on a claimed breach of contract. In her brief, she asserts that she is suing in tort. And in support of her right to do so she cites Snyder v. Redding Motors et al. 131 Cal.App.2d 416, 280 P.2d 811; Great Northern Life Ins. Co. v. Scott, 181 Okl. 179, 72 P.2d 790; Columbian National Life Ins. Co. v. Lemmons, 96 Okl. 228, 222 P. 255; and Brown v. Missouri State Life Ins. Co., 124 Okl. 155, 254 P. 7. The rule announced in those cases is exemplified by the holding in Snyder v. Redding Motors et al., supra, 280 P.2d loc. cit. 816, that:

"Failure to issue the policy or reject the application and to return or have

returned the premium to the respondents within a reasonable time after the receipt of the application, and which delay has misled the applicant to his prejudice, gives rise to an implied acceptance of the application, which will support an action ex contractu, even though these same facts may or would allow a recovery based on the theory of negligence, as under the Stark case [Stark v. Pioneer Casualty Co., 139 Cal. App. 577, 34 P.2d 731], supra."

Assuming that the rule may be as stated (and in that connection see Forck v. Prudential Ins. Co. of America, 228 Mo.App. 316, 66 S.W.2d 983 and Mathews v. New York Life Ins. Co., Mo.App., 128 S.W.2d 327) the weakness in plaintiff's case is that she did not proceed either on an action ex contractu or on the theory of negligence. In her petition plaintiff pleads that she learned from the Director of Revenue on August 8, 1958, that the defendant had denied to the Director that it insured plaintiff, and that " * * * the defendant in refusing to acknowledge to the Director of Revenue of the State of Missouri that it insured plaintiff as to Bodily Injury and Property Damage Liability * * * acted in an oppressive, arbitrary, malicious, wilful, wanton and unlawful manner * * *." In other parts of the petition plaintiff's action is described as "wrongful and unlawful," and again as "oppressive, arbitrary, malicious, wilful, wanton and unlawful." These are the only allegations of the wrongful conduct with which plaintiff charged defendant, as well as the only terms employed by the plaintiff to characterize the nature of the tort she attributes to defendant.

As was stated in Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570, 573: " * * * Negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe a prescribed standard of care (52 Amer.Jr., Sec. 20) while a willful, wanton, reckless injury is another kind of tort, an intentional injury often

based upon an act done in utter disregard of the consequences. * * *" An act cannot be both negligent and intentional at the same time, for such allegations are inconsistent. Evans v. Illinois Central R. Co., 289 Mo. 493, 233 S.W. 397. To use a more familiar example, one struck and injured by an automobile may bring an action in tort, but the nature of the tort alleged will be determined by the terms employed to describe the claimed legal wrong. "Negligently," "carelessly," and similar words, charge an act of negligence, while "wilful," "wanton," "reckless," "malicious" and similar terms charge an entirely different cause of action. Nichols v. Bresnahan, supra.

In Komen v. City of St. Louis, 316 Mo. 9, 289 S.W. 838, 841, it was said of language similar to that in plaintiff's petition: " * * * These adjectives strike the ear with a harsh resonance. * * *" "Oppressive" conduct is that which is unjustly burdensome, harsh, or merciless. 67 C.J.S. 509, 510. The characterization of conduct as "malicious" or as done "maliciously" denotes the intentional doing of a harmful act without just cause or excuse, and may, depending upon the connection in which such terms are employed, be broad enough to include hatred or ill will, Hall v. Martindale, Mo.App., 166 S.W.2d 594, although they do not necessarily do so, Downey v. United Weather Proofing, 363 Mo. 852, 253 S.W.2d 976. " * * * Wilfulness implies intentional wrongdoing. A wanton act is a wrongful act done on purpose, or in malicious disregard of the rights of others. * * *" Evans v. Illinois Central R. Co., 289 Mo. 493, 233 S.W. 397, 400, quoted with approval in Brisboise v. Kansas City Public Service Co., Mo., En Banc, 303 S.W.2d 619, 623. Thus, under the theory of the cause of action pleaded in her petition, it was incumbent upon the plaintiff, in order to make a submissible case, to produce evidence of an intentional injury.

The conclusion is inescapable that the evidence was insufficient to make a submissible case on the theory pleaded. All

that appears from the evidence is that on June 3, 1958, plaintiff's counsel had sent defendant a copy of plaintiff's report to the Safety Responsibility Unit, and that at some time between that date and June 18, 1958, counsel also sent defendant certain letters from lawyers representing other persons involved in plaintiff's accident of May 25, 1958. The defendant informed plaintiff's counsel of its position in its letter of June 18, 1958, in which it stated that while plaintiff had submitted an application for insurance, together with a deposit, plaintiff's application was not accepted; that the deposit was returned; and that at no time was coverage bound or any policy issued. Plaintiff never disputed or replied to that letter, nor ever again communicated with defendant. In fact, there is nothing in the record to indicate that plaintiff ever advised defendant, either before or after defendant's letter of June 18, of plaintiff's dual theory of coverage. The matter was dormant until the latter part of July, or the first part of August, 1958, when the Director of Revenue sent defendant the SR-21 Form dated June 2, 1958, on which plaintiff had reported the accident. Defendant was requested to, and did, state its position with respect to the status of the coverage plaintiff had claimed. Having before it plaintiff's report of June 2, which antedated its letter to plaintiff's counsel of June 18, and having received no reply to that communication, defendant had no knowledge, nor was it put on notice, that plaintiff was still claiming coverage. Of course, defendant may have been mistaken as to its legal position (and was, as we have shown), but in view of the foregoing state of the record, defendant's conduct in denying coverage cannot be said to have been oppressive, arbitrary, malicious, wilful, wanton or unlawful, the only theory on which plaintiff sought to hold it liable. Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750; Franta v. Hodge, Mo.App., 302 S.W. 2d 291.

Obviously, because of the conclusions we have reached, the alternative action of the court in sustaining defendant's motion for a new trial need not be considered.

The court committed no error in setting aside plaintiff's judgment and entering judgment in favor of defendant, and the judgment appealed from should therefore be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

WOLFE, P. J., ANDERSON, J., and O. P. OWEN, Special Judge, concur.